IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| MICHAEL CLAUSER | : | |
| --- | --- | --- |
| | : | No. |
| V. | : | |
| | : | **NON-JURY TRIAL DEMANDED** |
| PARETO SOLUTIONS GROUP, INC. | : | |
| | : | |

CIVIL ACTION COMPLAINT

*Parties*

1. The Plaintiff, Michael Clauser, is an adult individual who resides at 72 Sewell Street, Glassboro, NJ 08028.

2. The defendant, Pareto Solutions Group, Inc., is a corporation with a principal place of business located at 8 Piedmont Center, Ste. 210, Atlanta, GA 30305.

*Jurisdiction and Venue*

3. Jurisdiction is invoked herein pursuant to the Fair Labor Standards Act of 1938, as amended 29 U.S.C. 201, et seq. (hereinafter "FLSA").

4. Venue lies in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1391 because the transactions and occurrences which have led to this lawsuit took place in Gloucester County, New Jersey, which is located within this Judicial District.

*Facts*

5. At all times material hereto, defendant operated a business, which is engaged in commerce and has annual gross sales volume in excess of $500,000.00 annually.

6. At all times material hereto, plaintiff's work for defendant involved commerce between States because he regularly made telephone calls to persons located in other States during the applicable time period set forth herein below.

7. Plaintiff was hired by defendant on about February 19, 2018 as an Engineer Consultant in the State of New Jersey at his residence at 72 Sewell Street, Glassboro, Gloucester County, NJ 08028 in that his employment contract was signed at this location.

8. Plaintiff was assigned to work in Denver Colorado as an on-site consultant for a client of defendant known as Charter Spectrum Communications (hereinafter "client").

9. Defendant agreed to pay plaintiff at a rate of $60.00 per hour.

10. Defendant also agreed to reimburse living expenses so that plaintiff could stay in Denver, Colorado in the vicinity of the client.

11. Defendant engaged in a practice of reimbursing hotel and apartment costs between February 2018 and May 2018.

12. During the entire course of his employment, plaintiff always worked at least 40 hours per week for defendant.

13. Defendant stopped reimbursing plaintiff's living expenses in June 2018.

14. Plaintiff was unable to afford paying living expenses himself, so he notified defendant that he would be moving back to his home in Gloucester County, New Jersey and would continue to work for the client remotely.

15. Between about June 24, 2018 and July 21, 2018, plaintiff worked for defendant remotely from his home communicating with the client by phone, email and teleconferencing.

16. The client approved plaintiff's remote work from Gloucester County, New Jersey during this time period.

17. Plaintiff worked a total of at least 160 hours during this time period.

18. Near the end of the aforementioned time period, the client decided to cancelled its contract with defendant as of July 21, 2018 because it no longer desired remote services.

19. Plaintiff's employment with defendant thus ended on July 21, 2018.

20. To date, plaintiff has not been paid plaintiff for his work during the said time period that he was working remotely in

Gloucester County, New Jersey, which, as said, totaled at least 160 hours.

21. Defendant refused to pay plaintiff for his work as aforesaid, despite multiple demands for payment by plaintiff.

22. Defendant thus owes plaintiff at least $9,600.00 in wages for his work during the aforementioned time period.

23. Defendant has intentionally refused to pay plaintiff his lawful wages knowingly in violation of the FLSA.

COUNT 1- Violations of the FLSA

24. Plaintiff incorporates by reference paragraphs 1-23 herein.

25. Defendant knowingly and unlawfully failed to pay any wages to plaintiff for at least 160 hours of work during four workweeks in violation of the FLSA.

26. Defendant was an employer under the FLSA and was obligated to comply with the FLSA.

27. The FLSA requires covered employers such as defendant to pay its employees at least $7.25 per hour for each hour worked.

28. Plaintiff was not exempt from the minimum wage requirements of the FLSA, because defendant agreed to pay plaintiff hourly rather than a salary and plaintiff was not paid more than $100,000.00 by defendant during his employment.

29. Defendant acted willfully and knew that its conduct violated the FLSA or showed reckless disregard for the matter of whether its conduct violated the FLSA.

30. Defendant did not act in good faith with respect to the conduct alleged herein.

31. Specifically, defendants intentionally and in bad faith failed to pay plaintiff any wages during the applicable time period which was compose of 4 work weeks.

32. As a result of Defendant's unlawful practices, plaintiff suffered a loss of wages of at least $9,600.00.

33. Plaintiff is entitled to recover from the defendant liquidated damages in a sum equal to actual damages pursuant to the FLSA of at least $9,600.00 for all said intentional and knowing violations during the applicable time period.

34. Plaintiff is entitled to recover from the Defendants reasonable attorneys' fees at a rate of $450.00 per hour and costs pursuant to the FLSA.

35. Thus, plaintiff seeks damages of at least $19,200.00 in actual and liquidated damages along with reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands that judgment be entered on Count 1 in his favor against defendant for lost pay, liquidated damages, reasonable attorneys' fees and costs, and any other relief that this Honorable Court deems to be fair and proper.

## COUNT 2—ERISA-- COBRA

36. Plaintiff incorporates by reference paragraphs 1-35 herein.

37. Defendant also included plaintiff in its group health plan with United Healthcare during plaintiff's employment.

38. Said group health plan was a plan pursuant the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"), 29 U.S.C. Section 1132(a)(1)(B).

39. Said group health plan is enforceable pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (hereinafter "COBRA") in that defendant had at least 20 employees.

40. It is believed and averred that defendant was administrator of the aforementioned group health plan.

41. Pursuant to COBRA, defendant is required to offer continuation coverage to covered employees who lose their job for reasons other than gross misconduct.

41. Plaintiff was entitled to continue his healthcare insurance coverage for a period of 18 months following his

termination, so long as plaintiff elected to receive such benefits and thereafter made timely monthly payments for such benefits.

40. Pursuant to COBRA, defendant was required to send a so called "COBRA letter" to plaintiff to advise him of what steps to take to continue his healthcare insurance coverage.

41. Plaintiff's healthcare insurance coverage was canceled by defendant as of July 31, 2018.

42. Defendant, as administrator of its group health plan, was required to provide plaintiff with an election notice (hereinafter "COBRA letter") within 14 days the termination of his employment.

43. The said COBRA letter was required to describe plaintiff's rights to continuation coverage and how to make an election.

44. Plaintiff desired to continue coverage after his employment because he suffered from a serious health condition which required him to purchase expensive prescription medication.

45. Specifically, at all times material hereto, plaintiff suffered from insulin dependent diabetes, which required him to take expensive prescription medication.

46. Said prescription medication had and has to be refilled by plaintiff every thirty days.

47. Said prescription medication was covered by said group health plan while plaintiff was a plan beneficiary.

48. For a period of five (5) months, plaintiff was forced to pay for his prescription medication out of pocket (about $400.00 monthly) and was forced to avoid expensive doctor's visits until he obtained alternative coverage through the Health Insurance Marketplace in New Jersey which commenced on January 1, 2019.

49. To date, defendant has failed to send plaintiff a Cobra letter.

50. Defendant is liable to plaintiff for $110 a day pursuant to Section 502(c)(1) of ERISA from the date plaintiff should have been provided with a COBRA letter though the date, if any, that defendant cancelled plaintiff's COBRA notice.

51. Based upon the cancelation date of plaintiff's coverage—July 31, 2018—the said COBRA letter should have been sent to plaintiff by at least August 14, 2018 (14 days later).

52. Plaintiff desired to exercise his COBRA rights upon termination of his benefits.

53. As a result of defendant's failure to send a COBRA letter or otherwise provide written notice of plaintiff's COBRA rights, plaintiff was caused to be without insurance for five months.

54. Plaintiff seeks enforcement of a penalty against defendant for at least 139 days between August 14, 2018 and December 31, 2018, which was the date plaintiff obtained alternation health coverage.

55. Thus plaintiff seeks $15,290.00 in penalties pursuant to Section 502(c)(1) of ERISA for defendant failure to send plaintiff a COBRA letter.

56. Plaintiff is entitled to recover from the Defendants reasonable attorneys' fees at a rate of $450.00 per hour and costs pursuant to ERISA.

WHEREFORE, Plaintiff demands that judgment be entered on Count 2 in his favor against defendant for penalties and reasonable attorneys' fees and costs, and any other relief that this Honorable Court deems to be fair and proper.

SAMUEL A. DION, ESQ.
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033
samueldion@aol.com
Attorneys for Plaintiff

Dated: February 7, 2019